UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CRIMINAL ACTION NO. 5:19-CR-10-TBR

**UNITED STATES OF AMERICA,**                                                              **PLAINTIFF**

**v.**

**DUSTIN R. STONE,**                                                                               **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant Dustin R. Stone's Motion *in Limine*, [DN 78]. The Government has responded, [DN 79]. This matter is ripe for adjudication. For the reasons stated below, Defendant's Motion *in Limine*, [DN 78], is **DENIED IN PART** and **GRANTED IN PART**.

## BACKGROUND

On February 12, 2019, Defendant was indicted on one count of attempted enticement and one count of commission of a felony against a child by a person required to register as a sex offender. [DN 1]. The Indictment charged Defendant with knowingly attempting to persuade, induce, and entice an individual, whom he believed to be a thirteen-year-old female, to engage in sexual activity. *Id.* On March 14, 2019, Defendant entered a plea of not guilty as to counts one and two. [DN 11]. On March 19, 2020, Defendant filed a notice of insanity defense. [DN 32]. Simultaneously, Defendant filed a notice of intent to rely upon the defense of insanity pursuant to Federal Rules of Criminal Procedure 12.2(a) and (b), thereby placing the United States on notice that the Defendant may rely on the defense of insanity at the time of the alleged offense, and may introduce expert testimony relating to a mental disease or defect or some other mental condition of the Defendant bearing upon the issue of guilt. [DN 31]. In response, the United States filed a

motion for a psychiatric examination, pursuant to 18 U.S.C. §§ 4241, 4242, and 4247 and Rule 12.2(c), to determine whether Defendant was insane at the time or the offense and to determine whether he was competent to stand trial. [DN 40]. The United States' motion requested that Defendant be taken into custody to be examined by a licensed or certified psychologist. On May 27, 2020, Defendant withdrew the notice of intent to rely upon the defense of insanity and mental disease or defect, citing that Defendant informed counsel that he did not wish to rely on the defense of insanity or introduce evidence of a mental disease or defect at trial. [DN 46; DN 47]. The United States withdrew its motion for a psychiatric evaluation on June 2, 2020. [DN 51].

On June 2, 2020, the Court issued a Scheduling Order whereby the case was re-set for trial on September 14, 2020 and all pre-trial motions were to be filed by July 1, 2020. [DN 50]. Subsequently, on August 10, 2020, forty days past the deadline to file pre-trial motions, Defendant filed another notice of intent to introduce expert testimony relating to a mental disease or defect. [DN 53]. This time however, Defendant conceded that insanity was not an issue but that he was otherwise not criminally responsible due to a mental disease or defect. *Id.* The United States renewed its motion for a psychiatric examination to determine Defendant's criminal responsibility and competency to stand trial. [DN 54]. Defendant then filed an objection to the government's motion for custodial mental examination and provided a copy of a report from Dr. Wayne Herner, a forensic psychologist. [DN 57]. The United States filed a reply continuing its request for a custodial examination, [DN 59], and filed a sealed motion to exclude Dr. Herner's proposed expert testimony, arguing that diminished capacity evidence is not admissible in defense of a general intent crime. [DN 61]. The United States also argued that the proposed testimony was irrelevant and not sufficiently reliable under Federal Rule of Evidence 702. *Id.*

On October 9, 2020, Defendant again withdrew the notice of intent to introduce expert testimony and to rely on mental disease or defect. [DN 68]. As grounds, counsel indicated that "on October 8, 2020, the defendant notified counsel of his agreement with counsel's decision not to seek introduction of such evidence at the trial herein." *Id.* The Court granted Defendant's motion, [DN 69], and held that the United States' motion for a psychiatric examination and sealed motion to exclude Dr. Herner's proposed testimony were moot. [DN 72]. The trial date was re-set for March 29, 2021 but was subsequently continued to July 26, 2021 in response to the COVID-19 pandemic. [DN 77]. On April 12, 2021, Defendant filed the current motion regarding mental disease or defect, this time requesting the Court enter an *in limine* order, pursuant to Rule 104(a) of the Federal Rules of Evidence, making an pre-trial determination on the admissibility of the proffered evidence. [DN 78]. Rule 104(a) states, "[t]he court must decide any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege." Fed. R. Evid. 104(a).

## LEGAL STANDARD

Using the inherent authority to manage the course of trials before it, this Court may exclude irrelevant, inadmissible, or prejudicial evidence through *in limine* rulings. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c)); *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013). Unless such evidence is patently "inadmissible for any purpose," *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997), though, the "better practice" is to defer evidentiary rulings until trial, *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975), so that "questions of foundation, relevancy and potential prejudice may be resolved in proper context," *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010). A ruling *in limine* is "no more than a preliminary, or advisory, opinion." *United*

*States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994) (citing *United States v. Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983), aff'd, 469 U.S. 38). Consequently, the Court may revisit its *in limine* rulings at any time and "for whatever reason it deems appropriate." *Id.* (citing *Luce*, 713 F.2d at 1239).

## DISCUSSION

Two distinct arguments relating to mental disease or defect may be relevant to a criminal defense: "'diminished responsibility' where a defendant's insanity absolves him of criminal responsibility, and 'diminished capacity' where the mental condition is such that the defendant cannot form the culpable mental state." *United States v. Clark*, 294 F.3d 791, 793 (6th Cir. 2002) (citing *United States v. Kimes*, 246 F.3d 800 (6th Cir. 2001)) (a case involving diminished responsibility). Here, Defendant proposes to present "[Dr. Herner's] expert opinion, anecdotal lay testimony, and supporting medical and psychiatric diagnostic and treatment records establishing that currently and at the time of the offense conduct alleged herein, [Mr. Stone] suffered from Tourette syndrome, epilepsy, seizures, autism spectrum disorder, and other mental conditions." [DN 78 at 508]. The prosecution bears the burden to show beyond a reasonable doubt that Defendant possessed the required *mens rea* to commit the general intent crimes charged. The defendant also has a right to present evidence rebutting the claims that he possessed the requisite *mens rea* because of his diminished capacity. *United States v. Veach*, 455 F.3d 628, 633–34 (6th Cir. 2006). Therefore, since a Defendant's mental status or condition might prove or disprove the existence of *mens rea*, a psychiatric expert such as Dr. Herner might present relevant evidence regarding Defendant's mental state, even though Defendant does not claim the defense of insanity. *See* Fed. R. Evid. 401 and 402.

Defendant seeks to introduce the following evidence: (1) Mr. Stone's medical and psychiatric records that include the report of Dr. Wayne Herner, Psy.D., M.S., dated July 25, 2020,

and supporting documentation and records that have been produced to the United States pursuant to Rule 16(b)(1)(B) and (C) of the Federal Rules of Criminal Procedure; (2) witness testimony; and (3) the expert opinion of Dr. Herner based on these records, interviews with Defendant's family, and his own testing and evaluation. [DN 78 at 509]. For example, Defendant states that records from the Trover Clinic reveal that due to Tourette syndrome, Mr. Stone's ability to "assess subtle environmental cues, read social situations, and act appropriately were impaired." *Id.* Defendant further stipulates that "Mr. Stone is not insane or legally incompetent." *Id.* Rather, "Dr. Herner's opinion will be that although Mr. Stone clearly knows the difference between right and wrong, his actions as it involves his current charges, were impacted by his neurocognitive difficulties regarding logical reasoning, capacity to think about intended actions, ability to consider possible consequences, and to exercise restraint." *Id.*

Defendant contends "the proffered evidence is relevant to the issue of what defendant believed at the time of the alleged offense, as well as his state of mind, motive, intent, preparation, plan, knowledge, and likelihood of mistake." [*Id.* at 511]. Specifically, Defendant argues that "the proffered testimony by Dr. Herner is relevant to whether Mr. Stone "believed"—or to use the language of the Sixth Circuit Patter Instruction, "knew"—the individual with whom he was communicating was under the age of 18." [DN 83 at 536]. Moreover, Defendant Stone's "diagnosed conditions are likely to exhibit themselves as non-testimonial in-court behavior and appearance such as tics, involuntary vocal noises and sounds, and seizure activity." [DN 78 at 511]. Thus, according to Defendant, "without the proffered evidence to explain the same, the jury is likely to conclude that [Defendant Stone] is being intentionally disruptive and disrespectful of the Court." *Id.*

In response to Defendant's motion, the Government argues that "[t]he proposed 'diminished capacity' evidence offered by Dr. Herner does not negate the defendant's knowledge and is therefore inadmissible in light of *Odeh*." [DN 82 at 524]. The Court agrees.

Generally, "evidence of diminished capacity may be used to negate the *mens rea* of specific intent crimes only." *Gonyea*, 140 F.3d at 653. However, as the Sixth Circuit recently clarified in *United States v. Odeh*, evidence of diminished capacity may be admissible in general intent prosecutions, but only where the diminished capacity relates to what would be a general intent element, i.e., knowledge. *United States v. Lilley*, No. 15-6415, 2017 WL 7048806, at *4 (6th Cir. July 26, 2017) (citing *United States v. Odeh*, 815 F.3d 968, 978–79 (6th Cir. 2016)). In *Odeh*, the defendant was charged with "knowingly procuring naturalization contrary to law." *Odeh,* at 973. The record evidence showed that defendant's post-traumatic stress disorder caused memory loss such that when the defendant told immigration officers untruthful answers, she could not have known she was not telling the truth. *Id*. at 976–77. Thus, because the evidence "potentially negate[d] the general intent element" of knowledge, the defendant was entitled to a diminished capacity instruction on that point. *Lilley*, 2017 WL 7048806, at *5 (discussing *Odeh*, at 979).

In *Lilley*, the defendant was found guilty of sex trafficking children, sexual exploitation of a minor, and distribution and possession of child pornography. *Id.* During trial, a defense expert gave her opinion regarding the defendant's cognitive impairments, specifically that the defendant suffered from major depressive disorder, anxiety involving panic attacks, dependent personality disorder, and PTSD. *Id.* at *4. The expert further testified that the defendant was able to send text messages to others and that he could perform simple daily tasks such as collecting money, driving a vehicle, and inviting people to his home. *Id.* At the close of trial, the district court refused to instruct the jury on diminished capacity, finding that the testimony did not have the potential to

negate the *mens rea* at issue, nor was it relevant to such a finding. *Id.* at *5. The Sixth Circuit, upholding the district court's ruling, stated that, if anything, "the record evidence of cognitive impairments goes towards negating Lilley's ability to complete the relevant *actus reus*, not the *mens rea* of any charged crimes." *Id.* The panel acknowledged its recent decision in *Odeh*, drawing distinctions between diminished capacity evidence that potentially negates a general intent *mens rea*, i.e., knowledge, and that which only serves to negate the specific *actus reus* element of the crime. *Id.*

Here, Defendant is charged with attempted enticement of a minor. The elements of coercion and enticement of a minor are that (1) defendant used a facility or means of interstate commerce in an attempt to **knowingly** persuade, induce, entice, or coerce an individual under the age of eighteen to engage in sexual activity; (2) defendant believed the person was under eighteen; and (3) that if sexual activity had occurred, the defendant could have been charged with a criminal offense under state law. 18 U.S.C. § 2422(b) (emphasis added); *Johnson*, 775 F. App'x at 797 (citing *United States v. Roman*, 795 F.3d 511, 515–16 (6th Cir. 2015)). Defendant's proposed expert, Dr. Wayne Herner, opines that Defendant "in all likelihood suffers from neurological and psychological difficulties. Cognitively, evaluation beginning at 8 years of age, have consistently demonstrated significant discrepancies between his verbal and nonverbal cognitive scores, with verbal scores typically being stronger than the nonverbal." [DN 57-1 at 464]. "Discrepancies between cognitive scores are often associated with neurological dysfunction." *Id.* Dr. Herner further opines that Defendant's "thought processes are likely to be marked by confusion, indecision, distractibility, and difficulty concentrating." [*Id.* at 463]. "He likely often misses social 'cues' that other adults typically understand . . . and continues to struggle to learn [ ] and to reason, plan, understand, judge, and discriminate." [*Id.* at 465]. Dr. Herner used the Rey 15 item test to

assess the validity and rule out possible malingering or exaggerated memory problems. Scores below 8 are considered indicative of this potential. The report states that Defendant obtained a score of 9. [*Id.* at 462]. Dr. Herner then assessed Defendant's current verbal intelligence and working memory using the Wechsler Adult Intelligence Scale-IV. The report states:

> [Defendant's] verbal comprehension score fell at the 10th percentile with an IQ score of 81. This is within the low end of the average range. Weakness in verbal reasoning, verbal fluency, word knowledge, and verbal concept formation are addressed through this measure. His short-term memory also fell within the low end of the average range, indicating problems with attention and concentration.

[*Id.* at 464].

The Court recognizes that cognitive impairments that affect memory are relevant to a person's "knowledge," and may potentially negate the *mens rea* for the crimes charged. *See Lilley*, 2017 WL 7048806, at *12 (dissent) (citing *Odeh*, 815 F.3d at 979)). However, the results of Dr. Herner's assessment do not suggest that Defendant suffers from memory loss that would affect his knowledge in this way. Ultimately, Dr. Herner proposed the following diagnoses: major neurocognitive disorder due to multiple etiologies (epilepsy, history of multiple head trauma, Tourette syndrome); autistic spectrum disorder features; and generalized anxiety disorder. [*Id.* at 468]. Dr. Herner did not address whether Defendant's neurocognitive difficulties could have potentially negated Defendant's knowledge or belief that he was communicating with a minor.

Defendant states that discovery received from the United States contains statements made by Defendant that he believed he was communicating with an adult who was role-playing as a minor. Therefore, Defendant argues "Dr. Herner's proffered testimony goes to the issue raised by an essential element of the charged offense, i.e., whether Defendant 'believed' his correspondent was a minor or an adult." [DN 83 at 535]. The Government concedes that knowledge is an element of the present offense. Therefore, in light of *Odeh*, evidence of mental disease or defect is

potentially relevant and admissible "*if it serves to negate the specific element of knowledge.*" [DN 82 at 530]. However, the Government argues that Dr. Herner did not conclude that any of Defendant's conditions negate his knowledge that he was committing a crime; and the report does not indicate that Defendant's conditions somehow render him incapable of *knowingly* communicating with others. [DN 82 at 526]. Instead, the Government suggests that "Dr. Herner's report serves only to justify or excuse the defendant's actions by concluding that he misses social cues and that he has difficultly controlling his impulses." [*Id.* at 531].

As stated, the proffered evidence does not show that Defendant's mental conditions impacted his memory or potentially negated his knowledge or belief that he was communicating with a minor. On the contrary, Dr. Herner's report states that "although Mr. Stone clearly knows the difference between right and wrong, his actions as it involves his current charges, are impacted by his neurocognitive difficulties regarding logical reasoning, capacity to think about intended actions, ability to consider possible consequences, and to exercise restraint." [DN 57-1 at 467]. This evidence does nothing to negate the *mens rea* required for the charged offence: that he knowingly enticed an individual under the age of 18.

As the Sixth Circuit explained in *Odeh*, 815 F.3d at 977, "Because the Government must prove every element of a crime beyond a reasonable doubt, *see In re Winship*, 397 U.S. 358, 363–64 (1970), a defendant's right to present a defense 'generally includes the right to the admission of competent, reliable, exculpatory evidence' to negate an element of the offense. . . ." Here, however, as the evidence does not negate an element of the crime and accordingly is not exculpatory, Defendant has no constitutional right to its admission.

The Government further contends that the proposed expert and lay testimony is irrelevant and would serve no purpose other than to confuse the jury and/or garner sympathy for the

defendant from the jury. Therefore, the Government requests that the Court prohibit such testimony pursuant to Federal Rule of Evidence 402 and 403. Evidence is relevant if it has any tendency to make a fact of consequence (in deciding the action) more or less probable. Fed. R. Evid. 401. Relevant evidence is admissible but may be excluded where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Real, demonstrative, and experimental evidence are permissible at the judge's discretion.

Here, the Court finds that the probative value of the proffered evidence is substantially outweighed by the danger that the testimony will confuse the issues or mislead the jury. Fed. R. Evid. 403. As this testimony does not suggest that Defendant lacked the knowledge required for the offense, it has little probative value in terms of supporting Defendant's defense theory. Instead, the proffered testimony risks coming across to the jury as a justification for Defendant's actions—which is an affirmative defense not raised in this case.

However, the Court will allow testimony or stipulation to explain that Defendant Stone's diagnosed conditions including tics, involuntary vocal noises and sounds, and seizure activity, may exhibit themselves as non-testimonial in-court behavior. Essentially, if Defendant Stone experiences any of these involuntary conditions, it should not be construed as intentionally disruptive or disrespectful to the Court. The Court understands the parties will stipulate to this matter.

## CONCLUSION

For the reasons stated, **IT IS HEREBY ORDERED** that Defendant's Motion *in Limine*, [DN 78], is **DENIED IN PART** and **GRANTED IN PART**.

**IT IS SO ORDERED.**

**Thomas B. Russell, Senior Judge
United States District Court**

June 8, 2021

CC: Counsel of Record